**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| R. MATTHEW MINIELLY, *on behalf of himself and those similarly situated*, | C.A. NO. |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| SENTRYLINK, LLC, | |
| Defendants. | |

<u>**COMPLAINT – CLASS ACTION**</u>

Mr. Minielly brings this action against SENTRYLINK, LLC for violation of his rights and those similarly situated under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* for furnishing a misleading and inaccurate criminal background report furnished to a third party.

**I.      GENERAL ALLEGATIONS**

1.      Many employers require job applicants to complete a background check successfully prior to extending an offer of employment.

2.      Companies that provide background check services collect information concerning members of the public, such as criminal histories, into reports and offer the reports for sale. Including for sale to employers when the employers are conducting background checks on prospective and current employees.

3.      Defendant   provides such services. Defendant offers background reports for sale to employers including background reports containing criminal histories.

4.      Because an employer's hiring decision often depends upon the applicant being either completely free of criminal convictions, free of certain types of criminal conviction, or free

of criminal convictions within a certain period of time, it is extremely important that the information contained in criminal history reports is accurate.

5.      Unfortunately, for prospective employees whose prospective employers engage background reporting services based on data compiled by resellers like Defendant, the reports (a "Criminal Conviction Report") are often misleading and inaccurate.

6.      Defendant's misleading and inaccurate Criminal Conviction Reports result in adverse employment decisions against qualified employees.

7.      Defendant provided a misleading and inaccurate Criminal Conviction Report to Plaintiff's prospective employer, Stuffed Puffs, LLC in that it produced information used in a Sentry Link background check report which reported five (5) pending criminal charges under the "National Criminal and Offense" section of the report. Those charges, were in fact, dropped and dismissed.

8.      Thus, the Defendant presented Mr. Minielly's criminal history information in its National Criminal and Offense Report to Sentry Link in a manner that misleads and is inaccurate, which consequently injured Mr. Minielly.

9.      As described in detail below, Defendant has injured Mr. Minielly by providing his prospective employer through Sentry Link with misleading and inaccurate Criminal Conviction Report. The inaccurate Criminal Conviction Report resulted in, among other things, Mr. Minielly's offer of employment being rescinded by prospective employer, Stuffed Puffs, LLC.

10.      A report that is anything but blank can severely undermine an individual's employment possibilities for his or her entire life and can result in collateral consequences that expand an individual's punishment beyond that originally contemplated by the criminal justice system.

11.     In August 2020, Stuffed Puffs refused to hire Mr. Minielly based solely on criminal history record information in a Sentry Link background check that showed five (5) pending criminal charges under the "National Criminal and Offense" section of the report.

12.     Defendant systematically violates the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (the "FCRA"), by failing to follow reasonable procedures to assure maximum possible accuracy of Mr. Minielly's Criminal Conviction Report.

13.     As a result, Ms. Minielly brings the instant claims, seeking injunctive relief, actual damages, exemplary and punitive damages, and costs and fees.

**II.     PARTIES**

14.     Plaintiff R. Matthew Minielly ("Plaintiff" or "Mr. Minielly") is a 43-year-old individual who resides in Northampton County, Pennsylvania and is a "consumer" as protected and governed by the FCRA. Mr. Minielly is currently unemployed.

15.     SENTRYLINK, LLC, (hereinafter, "Defendant"), is a business entity that provides employment screening services to various third-parties and is registered as an LLC in the State of Maryland and has its principal place of business located at 7500 Greenway Center Drive, Suite 1040, Greenbelt, MD 20770.

**III.     JURISDICTION AND VENUE**

16.     This Court has original subject matter jurisdiction over Mr. Minielly's FCRA claim pursuant to under 15 U.S.C. § 1681p, 28 U.S.C. § 1331.

17.     Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

18.     This Court has personal jurisdiction over the matter because the Defendant conducts substantial business activity in this District and because many of the unlawful acts described herein occurred in this District and give rise to the claims alleged, including but not

3

limited to: Mr. Minielly's claims arise directly out of Defendant's conduct within the Commonwealth of Pennsylvania, including Defendant's misleading and inaccurate criminal background report to Mr. Minielly's potential employer, Stuffed Puffs.

## IV.    FACTUAL ALLEGATIONS

19.    Mr. Minielly had been charged in 2018 with six (6) misdemeanor criminal offenses on one occasion related to a dispute with his ex-partner, his only lifetime contact with the criminal justice system.

20.    On April 26, 2019, Mr. Minielly pled guilty to one (1) of these misdemeanor charges while the other five charges were dismissed in April 2019 in the Lehigh County Court of Common Pleas.

### Mr. Minielly's Application for Employment with Stuffed Puffs

21.    In or around June 26, 2020, Mr. Minielly applied for an open position with Stuffed Puffs as a Controller. Mr. Minielly applied for the position by completing a Stuffed Puffs employment application online.

22.    Mr. Minielly was qualified for the position.

23.    Shortly thereafter, Mr. Minielly interviewed, telephonically and through video conferencing, and visited Stuffed Puffs' offices to meet with the company founder regarding employment.

24.    After the aforesaid series of interviews, Stuffed Puffs made an offer of employment to Mr. Minielly contingent upon drug screen and background check results.

25.    In connection with Mr. Minielly's application, Stuffed Puffs purchased a background screening report from a third party CRA, Defendant Sentry Link. Hence, the report was obtained and used for an employment purpose.

4

26.     On or about August 7, 2020, using its usual practices and procedures, Defendant compiled and furnished criminal records data to Sentry Link for use in a consumer background report to Stuffed Puffs regarding Mr. Minielly.

27.     On or about August 14, 2020, Mr. Minielly received a letter stating that the background check report received from Defendant may affect his application for employment with Stuffed Puffs. Attached to the letter was from Stuffed Puffs was a National Criminal and Offense Report from Sentry Link which was compiled for Sentry Link by Defendant.

28.     Mr. Minielly was also told verbally by the Talent Acquisition department at Stuffed Puffs that it could not hire him given the pending status of the aforesaid five (5) criminal charges.

29.     Thereafter, Plaintiff informed Stuffed Puffs of the inaccuracy of the report's criminal information showing five (5) pending open and/or pending criminal charges rather than those charges being accurately reported as dismissed.

30.     Plaintiff disputed the report's accuracy with Sentry Link accordingly.

31.     Thereafter, Stuffed Puffs informed Mr. Minielly that it was denying his application for employment through a "Notice of Adverse Action" letter.

32.     In September 2020, Sentry Link informed Mr. Minielly that his dispute with Sentry Link resulted in the latter removing of the aforesaid five (5) criminal charges altogether thereby finally correcting the pending/open status of those charges.

33.     Stuffed Puffs denied Mr. Minielly's application for employment based partly or solely upon the five (5) criminal charges inaccurately being reported as pending when they were, in fact, dismissed.

**The Fair Credit Reporting Act and Electronic Case Records in Pennsylvania**

34.    The Administrative Office of Pennsylvania Courts ("AOPC") provides electronic information about Pennsylvania criminal cases to the public.

35.    Information about an individual's criminal cases in Pennsylvania can be obtained by any member of the public by searching the Unified Judicial System of Pennsylvania's web portal. *See* https://ujsportal.pacourts.us/docketsheets.aspx.

36.    Information can also be obtained through bulk distribution of electronic case records.

37.    AOPC sells this information on a recurring basis.

38.    Upon information and belief, Defendant obtains electronic case record data generated by AOPC through a reseller.

39.    One of the data elements that is provided by AOPC for each electronic case record, where available, is the status of the offense charged.

40.    Upon information and belief, Defendant obtained plaintiff's criminal database record data from a reseller company called Backgroundchecks.com which records it included in the report used by Stuffed Puffs as described herein.

41.    In an action styled *Der-Hacopian v. Sentry link*, D. Md. No. 8:18-cv-03001-PWG, Defendant was sued for its data collection and reporting practices for employment background checks. As part of the settlement of said action, Defendant promised to stop using reporting results "…provided by Backgroundchecks.com. Further, Defendant agrees and acknowledges that when it sells any consumer report containing any criminal database records, said records will be verified against court records, either by Defendant or its partners, before providing results to third-parties." (sec. 8(H).

6

42.     Had Defendant followed reasonable procedures and adhered to the foregoing settlement agreement, it would have never falsely reported the five dismissed charges as pending and/or open charges on Plaintiff's consumer background report.

43.     Defendant has deliberately, willfully, recklessly and negligently adopted a policy and practice that disregards its duty to follow reasonable procedures to assure maximum possible accuracy of the information about the individuals to whom the reports relate, in violation of the FCRA.

44.     Defendant's conduct affected Plaintiff and numerous other consumers about whom it sold reports, when Defendant sold background reports which contained public record information without reporting the most up to date disposition of the record.

45.     Defendant has sold background reports about numerous individuals which contained public records which were not up to date.

46.     The identities of the other individuals about whom Defendant reported inaccurate and outdated public record information can be identified through review of Defendant's business records and publicly available records, based upon objective criteria.

47.     Defendant also fails to maintain strict procedures to ensure that its public record information sold to employers is complete and up to date.

48.     Specifically, Defendant fails to consult the available public records to determine the most up to date status of public record information before including such records on consumer reports for employment purposes.

49.     With respect to Plaintiff, Defendant did not consult the available public record of the five (5) open and/or pending criminal charges from April 2019 before including related information on its report about Plaintiff.

7

50.     Defendant's failure to consult these underlying public records is a result of its deliberately adopted policies, practices, and procedures which are standardized and followed with respect to each of the consumer reports it prepares.

## V.     CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following §1681e(b) Outdated Records Class:

> All natural persons residing within the United States and its Territories who, beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, were the subject of a consumer report prepared by Defendant which included any criminal record reported as pending for which the status or disposition of the public record had changed to "dismissed", or otherwise was not updated, more than 30 days prior to the date of the report, and for which Defendant did not include the most recent status or disposition.

52.     All natural persons residing within the United States and its Territories who, beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, were the subject of a consumer report prepared by Defendant which included one or more items of criminal record information which had been expunged, sealed, or otherwise removed from the public record prior to the creation of the report.

53.     Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

54.     **Numerosity.  Fed. R. Civ. P. 23(a)(1).**  The Class members are so numerous that joinder of all is impractical. Defendant sells thousands of consumer reports on consumers each

year, and those persons' names and addresses are identifiable through documents maintained by Defendant.

55.    **Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Classes and predominate over the questions affecting only individual members. The common legal and factual questions include, among others: Whether Defendant violated § 1681e(b) of the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it sold.  *See Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 201-06 (E.D. Va. 2015) (§ 1681e(b) class claim involving objective comparison of consumer reports to available public records presented common questions with respect to accuracy and reasonable procedures)

56.    **Typicality.  Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each Class member, which all arise from the same operative facts and are based on the same legal theories.

57.    **Adequacy.  Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate representative of the Classes because his interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

58.    **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation

necessitated by Defendant's conduct.  It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them.  Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.  *See Souter*, 307 F.R.D. at 214 (§ 1681e(b) claim presents predominating questions with respect to inaccuracy because evaluation of inaccuracy based on "verifiable and objectively determinable" evidence available for all class members).

**COUNT I - Violation of 15 U.S.C. 1681e(b)**
**(On behalf of Plaintiff and Class)**

59.    Plaintiff reiterates each of the allegations in the preceding paragraphs as if fully set forth at herein.

60.    In the "Congressional findings and statement of purpose" of the FCRA, Congress stated that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681a(3), (4).

61.    Mr. Minielly is a "consumer" under the FCRA because Plaintiff is an individual. 15 U.S.C. § 1681a(c) ("The term 'consumer' means an individual.).

10

62.     The FCRA applies to Defendant because it is a "person" and a "consumer reporting agency" under the statute and its National Criminal and Offense Reports are "consumer reports" under the statute. *Id.* § 1681a(b), (d)(1), (f).

63.     Indeed, Defendant has admitted the FCRA applies to the National Criminal and Offense Reports it issues as it did for Plaintiff's prospective employer herein because it accompanies each such report with, *inter alia*, a copy of Plaintiff's rights under the FCRA.

64.     Under the FCRA, a "consumer reporting agency" is a "person which, for monetary fees . . . regularly engages . . . in part in the practice of assembling or evaluating . . . information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

65.     Defendant is a "consumer reporting agency" under the FCRA because, for monetary fees, it assembles or evaluates information on consumers for the purpose of furnishing National Criminal and Offense Reports to third parties (*i.e.*, the consumers' current or prospective employers), and because Defendant uses means or facilities of interstate commerce for the purpose of preparing or furnishing the National Criminal and Offense Reports. *Id.*

66.     Defendant's National Criminal and Offense Reports are "consumer reports" under the FCRA because each National Criminal and Offense Report is a "written . . . communication of . . . information by a consumer reporting agency bearing on a consumer's . . . character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . .employment purposes[.]" *Id.* § 1681a(d)(1)(B).

67.     Mr. Minielly's National Criminal and Offense Report was not procured using these special procedures.

68.     Mr. Minielly's report was not procured in connection with any investigation of suspected misconduct relating to employment or to compliance with federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer. § 1681e(b) of the FCRA provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).

69.     Under FCRA § 1681e(b), Defendant has a duty to "follow reasonable procedures to assure maximum possible accuracy of the information" in the National Criminal and Offense Reports. *Id.* § 1681e(b).

70.     Consumer reports are inaccurate for purposes of § 1681e(b) not only when they are facially false, but also when they are technically accurate yet nonetheless misleading.

71.     As set forth above, when preparing the National Criminal and Offense Report, which are consumer reports, Defendant has lacked, and continues to lack, reasonable procedures to assure the maximum possible accuracy of the information concerning the information about whom the reports relate. Defendant fails to follow such reasonable procedures because it knowingly, recklessly, or negligently reports summary convictions under the "Felony and Misdemeanor" § of the National Criminal and Offense Report.

72.     Defendant's liability to Mr. Minielly arose from the same unlawful policies, practices, or procedures.

73.     Defendant's violations of § 1681e(b) were willful in that (i) it knew, or reasonably should have known, that it was failing to comply with the FCRA and/or (ii) it was acting in reckless disregard of its responsibilities under the FCRA.

74.     In the alternative, Defendant's violations of § 1681e(b) were negligent in that it had an affirmative statutory duty to employ reasonable procedures to ensure maximum possible accuracy of the information in the consumer reports in question, but failed to comply with that statutory duty.

75.     If Defendant willfully violated § 1681e(b), Plaintiff is entitled to any actual damages he sustained or damages of not less than $100 and not more than $1,000; such amount of punitive damages as the court may allow; and the costs of the action together with reasonable attorney's fees as determined by the court, as specified in § 1681n(a)(1)(A), (2), and (3).

76.     In the alternative, if Defendant negligently violated § 1681e(b), Plaintiff is entitled to any actual damages he sustained, along with the costs of the action together with reasonable attorney's fees as determined by the court, as specified in § 1681o(a)(1), (2).

## COUNT II - Fair Credit Reporting Act, 15 U.S.C. § 1681k
### (On behalf of Plaintiff individually)

77.     Plaintiff reiterates each of the allegations in the preceding paragraphs as if fully set forth at herein.

78.     Pursuant to § 1681n and § 1681o of the FCRA, Defendant is liable for violating FCRA § 1681k(a) by engaging in the following conduct by failing to maintain strict procedures to insure that the public record information it sells to employers is complete and up to date.

### JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that relief be granted as follows:

A.  That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

B.  That judgment be entered against Defendant for statutory damages in the amount of not less than $100 and not more than $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a);

C.  That judgment be entered against Defendant for actual damages, pursuant to 15 U.S.C. §§ 1681n and 1681o;

D.  That judgment be entered against Defendant for punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.  Award costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and 1681o;

F.  That the Court grant such other and further relief as may be just and proper.

Dated: December 16, 2020

/s/Robert P. Cocco
ROBERT P. COCCO, P.C.
By:  Robert P. Cocco, Esquire
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
bob.cocco@phillyconsumerlaw.com

Attorneys for Plaintiff